THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT LANGFORD, Defendant-Appellant.

First District (1st Division)   No. 1—90—0794

Opinion filed June 29, 1992.—Rehearing denied September 16, 1992.

856

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Rebecca Davidson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

On January 31, 1986, defendant Robert Langford shot James Allen and John Goolsby to death while they were standing near an apartment building at 345 West 72nd Street in Chicago. Defendant subsequently was convicted of the murders (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) following a jury trial. The jury declined the State's request to impose a death sentence, and defendant was ordered imprisoned for the rest of his life without the possibility of parole.

Defendant now claims, for several reasons, that he was deprived of his constitutional right to a fair trial.

We affirm.

Defendant first contends the State calculated to elicit surprise testimony from Jacqueline Capleton, an eyewitness who knew defendant, that one of defendant's attorneys had intimidated her into recanting her identification of defendant to police shortly after the murder.

At trial, Capleton stated that early one morning approximately six weeks prior to trial, she was visited by one of defendant's attorneys, Shelton Green, and an investigator. During that visit, Green intimated to Capleton that the State's Attorney's office could not protect her. Capleton, already fearful of defendant, then told Green, untruthfully, that she was not certain the gunman was defendant. Green had impressed upon Capleton that defendant was innocent and that "because a stray bullet don't miss anyone, anything could happen" to her or her family. Capleton admitted her fears caused her to then sign an untrue written statement which represented that she had earlier identified defendant only after being harassed by police.

In a conference outside of the jury's presence, Green advised the trial judge that Capleton's testimony concerning his alleged statements was a surprise. Green withdrew from the case. Defendant moved for a mistrial, and the public defender's office moved to be allowed to withdraw from the case. Both motions were denied.

Defendant argues he was denied a fair trial because the State failed to notify the defense of Capleton's testimony. He points to opening comments made by the State that Capleton was pressured by defense attorneys to recant her identification of defendant as an indication that the State knew how Capleton would testify. Defendant's objection to those comments was sustained. Defendant also claims his right to counsel was violated because Green already had established a relationship with the jurors such that Capleton's accusations tainted the entire defense team. Defendant argues the State was, at most, obligated to notify the defense of Capleton's testimony as the State must do in instances of exculpatory evidence, citing, principally, *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and *United States v. Bagley* (1985), 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375. At least, defendant contends, the State had an ethical duty under Disciplinary Rules 1—102 and 1—103 to disclose the nature of Capleton's testimony. 134 Ill. 2d Rules 1—102, 1—103.

■ Assuming the State was aware of the reasons Capleton would give for her recantation of the written statement she gave to defense counsel, we are not persuaded that the State's failure to disclose that matter to defendant constitutes reversible error. The reasons Capleton gave for recanting her written statement simply have no relation

to the question of defendant's innocence. For that reason, defendant's reliance on *Brady v. Maryland,* requiring the disclosure of exculpatory evidence, and *United States v. Bagley,* extending that rule to evidence favorable to the defense, is misplaced. Furthermore, even if we were to assume a violation of Disciplinary Rule 1—102 or 1—103 would provide a means to affect defendant's conviction, nothing in the language of either rule compels disclosure of the content of Capleton's testimony given its nonexculpatory nature.

Defendant next maintains the trial judge permitted the State to present improper testimony concerning two rival Chicago street gangs to establish defendant's motive.

The State presented the challenged evidence through the testimony of Chicago police detective John Bloor, who was qualified as an expert for that purpose. In particular, Bloor testified that defendant was a member of one of the gangs. Bloor recounted the history of the gangs and described the continuing dispute between them over the right to sell drugs in the area where the murders occurred. Bloor established it was that dispute that motivated defendant to shoot the victims, who he stated were members of that rival gang.

Defendant contends Bloor's testimony was improper because the testimony was not supported by the type of evidence ordinarily relied upon by such experts in the field. Defendant points out that Bloor's testimony was based, primarily, on information gathered by police by talking to gang members. Defendant also complains that Bloor's testimony was irrelevant to establish defendant's motive.

■ Illinois courts recognize that a police officer's testimony regarding gang activity is proper when the officer's testimony qualifies as expert opinion, the testimony is relevant, and the prejudicial effect of the opinion does not outweigh its probative value. *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207.

■ The trial judge's allowance of Bloor's testimony here did not constitute an abuse of discretion so as to provide a basis to disturb defendant's conviction. (See *People v. Gonzalez* (1991), 142 Ill. 2d 481, 568 N.E.2d 864.) Bloor's experience with gang activity qualified him as an expert. Bloor worked as a gang crimes specialist for 10 of his 16 years on the police force. The area to which he was assigned was the area in which the murder occurred. In this case, Bloor's testimony was relevant to the extent that Bloor explained defendant was motivated to shoot the victims because they were members of a rival street gang vying for the same geographic area in which to sell narcotics. For that same reason, the establishment of a motive for the shooting, the admission of Bloor's testimony did not outweigh its

probative effect. See *People v. Ayala* (1990), 208 Ill. App. 3d 586, 567 N.E.2d 450.

■ Defendant also complains about the State's presentation of evidence that defendant was in Federal custody in Tennessee at the time the police located him, one month after the murders. Defendant claims the allowance of that testimony was prejudicial because it informed the jury of defendant's arrest in another matter.

We do not agree. Evidence concerning defendant's presence in Tennessee was established through the testimony of Chicago police detective William Foley. The record indicates that care was taken to introduce that testimony in such a way as to prevent the jury from discovering the existence and nature of any other charges against defendant. The evidence that defendant was in Tennessee was admitted properly as evidence of flight from which the jury could have inferred consciousness of guilt. See *People v. Nightengale* (1988), 168 Ill. App. 3d 968, 523 N.E.2d 136, *appeal denied* (1988), 122 Ill. 2d 587, 530 N.E.2d 258.

■ Finally, defendant complains that comments made by the State in closing argument and rebuttal were prejudicial. Defendant argues the State sought to imply how defendant's counsel had coerced Capleton's statement by having the jury draw a comparison to defendant's counsel's courtroom demeanor during delivery of his opening statement. Defendant contends the State improperly referred to Capleton's courage in testifying and otherwise bolstered the credibility of witnesses for the State and its theory of the crime. Defendant points to other comments as indicating an attempt to disparage defendant's counsel.

Generally, a prosecutor is permitted a great deal of latitude in making the closing argument, and the trial judge's determination of the propriety of the argument will be followed absent a clear abuse of discretion. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 514 N.E.2d 970.) Improper remarks are the basis of reversal only when they result in substantial prejudice to the defendant. *People v. Harris* (1989), 132 Ill. 2d 366, 547 N.E.2d 1241, *cert. denied* (1990), 496 U.S. 908, 110 L. Ed. 2d 275, 110 S. Ct. 2594.

We note that the complained-of comments relating to attempts to bolster the credibility of the eyewitnesses were not objected to at trial and therefore are waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) As for the remaining comments, we cannot conclude, based on the evidence presented, that the comments resulted in substantial prejudice to defendant. Overwhelming evidence of defendant's guilt was supplied by the testimony of Capleton and Deanna Hender-

son, a second eyewitness. Both viewed the murders at close range from separate vantage points. Each knew defendant's identity and positively identified him as the murderer at trial. In light of that evidence, we do not conclude the trial judge's decision to permit the State to make the comments now cited by defendant as improper constituted an abuse of discretion.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.