THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD MATTHEWS, Defendant-Appellant.

First District (1st Division)   No. 1—97—0894

Opinion filed October 26, 1998.—Rehearing denied November 19, 1998.

Law Offices of Jeffrey Urdangen, of Chicago (Jeffrey Urdangen and Marion Buckley, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Michael Faccenda, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant Reginald Matthews was convicted of first-degree murder and sentenced to 32 years in prison. On appeal, defendant contends: (1) the trial court committed reversible error with regard to the admission of gang-related evidence and in instructing the jury as to the proper use of such evidence; (2) defendant was denied his right to a fair trial when the trial court did not provide answers to certain jury questions; (3) defendant was denied due process when the State failed to provide defendant's alleged statement to

defense counsel in discovery, resulting in reversible error; (4) the trial court erred in not suppressing the lineup and defendant's statements as the fruits of an illegal arrest; and (5) there was insufficient evidence to support defendant's conviction.

We reverse and remand.

## FACTS

On October 2, 1994, the victim, Alphonso Taylor, and Damon Royal were walking east on 86th Street when a car slowed beside them and its occupants began "dropping" gang signs in disrespect of the street gang Conservative Vice Lords, of which Taylor and Royal were members. In response, Taylor and Royal began dropping gang signs disrespectful to the Blackstones street gang, to which the car's occupants belonged. The car drove away toward the west, and Taylor and Royal were joined by Roy Knight. Shortly thereafter, the car returned, approaching them from the front.

The front passenger of the vehicle then leaned out the passenger window and over the roof of the car and pointed a gun at the three individuals, who ran for cover. Royal heard a gunshot and saw Taylor, who was running away from the shooter, clutching his chest. Royal ran to call an ambulance and returned soon after to find Taylor surrounded by the police and others. Royal testified that he did not talk to police at that time because he thought his gang would deal with the shooter. Alphonso Taylor, the victim, was taken to a hospital and later died.

Detective Michael Rowan, assigned to investigate the homicide, conducted a canvass of the area following the shooting. The canvass resulted in a description of the vehicle involved in the crime, though Rowan did not obtain much additional information from witnesses at the scene. The next day, Rowan discovered an abandoned vehicle which matched the description, and it was impounded. After a second, unrelated shooting in which Royal was injured, he came to police with information about the Taylor murder. Royal provided police with a description of the shooter and identified the vehicle impounded by the police as the one used in the shooting.

Three juveniles were arrested and placed in custody in connection with the shooting: defendant Reginald Matthews, Devon Howard and Ricky Richardson. In a police lineup that included all three individuals, Royal identified defendant as the shooter. Approximately 15 minutes after the lineup identification, Rowan informed defendant he was under suspicion for the murder of Alphonso Taylor and that he had just been identified as the shooter in the lineup. Defendant told

him he was home asleep at the time of the shooting, as he did not get up that early. According to Rowan, defendant also told him that the reason he was identified in the lineup was because he was a Blackstone and the witnesses were Conservative Vice Lords.

Defendant's mother testified that, on the day of the shooting, she was waiting at her house for her sister, Rosalind, to come and drive her to church. When Rosalind arrived, defendant spoke with her until they left for church at around 11:50 a.m. Defendant testified on his own behalf and stated he returned home from his friend Richardson's house at around 11:30 a.m., when he spoke with his aunt in the driveway of his house. On cross-examination, he denied that he, Richardson or Howard was a member of the Blackstones.

Defendant further denied stating to police that the only reason he was picked out of the lineup was because he was a member of the Blackstones and the witnesses were Conservative Vice Lords. The defense objected to this line of questioning, arguing this statement had not been provided to him in discovery. The trial judge overruled the objection and allowed the testimony. On rebuttal, Rowan testified that defendant had, indeed, made the statement regarding his gang affiliation.

The jury found defendant guilty of first degree murder, and he was sentenced to 32 years in the Illinois Department of Corrections. Defendant now appeals this conviction.

## ANALYSIS

### I. The Discovery Violation

■ We first turn to defendant's argument that the State's failure to disclose in discovery a statement made by defendant to Detective Rowan denied defendant's due process rights and right to a fair trial. The standard of review for a discovery violation is whether the trial court abused its discretion. *People v. Weaver*, 92 Ill. 2d 545, 559, 442 N.E.2d 255 (1982). Though the judgment of the trial court in these matters is given great weight, a reviewing court will find an abuse of discretion when a defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice. *Weaver*, 92 Ill. 2d at 559.

At trial, defense counsel objected to testimony regarding a statement not provided to defense counsel in discovery, allegedly made by defendant to Rowan, that the only reason he was identified in the lineup was because he was a member of the Blackstones and the witnesses were Conservative Vice Lords. The objection was overruled,

and after defendant testified he was not a member of a gang, his testimony was impeached with the prior inconsistent statement in which he said that he was identified in the lineup because he was a member of the Blackstones street gang.

Disclosure to the accused in criminal cases is governed by Supreme Court Rule 412 (134 Ill. 2d R. 412). Rule 412 provides:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> ***
>
> (ii) any written or recorded statements and the substance of any oral statements made by the accused *** and a list of witnesses to the making and acknowledgment of such statements." 134 Ill. 2d R. 412(a)(ii).

The prosecution's duty to disclose under this rule is a continuing one, requiring prompt notification to the defendant of the discovery of any additional material or information, up to and during trial. 134 Ill. 2d R. 415(b); *People v. Watson*, 76 Ill. App. 3d 931, 935-36, 395 N.E.2d 682 (1979).

■ While compliance with the discovery rules is mandatory, the failure to comply with these requirements does not require a reversal absent a showing of surprise or undue prejudice. *People v. Robinson*, 157 Ill. 2d 68, 79, 623 N.E.2d 352 (1993). A new trial should be granted if the defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice. *People v. Tripp*, 271 Ill. App. 3d 194, 203, 648 N.E.2d 241 (1995).

The State admits it did not provide the statement to defendant in discovery, but argues that this failure did not unduly burden or prejudice defendant. We disagree and find that the State's failure to provide defendant with the statement at issue was a violation of the Rule 412(a)(ii) disclosure provision which unduly prejudiced defendant.

■ Illinois courts have relied on the following factors to determine whether a defendant is entitled to a new trial as a result of a discovery violation: the closeness of the evidence, the strength of the undisclosed evidence, the likelihood that prior notice would have helped the defense discredit the evidence, and the willfulness of the State in failing to disclose the new evidence. *People v. Secor*, 279 Ill. App. 3d 389, 664 N.E.2d 1054 (1996); *Robinson*, 157 Ill. 2d at 82.

■ First, we address the closeness of the evidence. Based on a review of the record, this was a close case. No weapon was ever

recovered and no ballistics evidence was introduced at trial. Few witnesses at the scene would cooperate with police, and the evidence linking the vehicle used in the crime to defendant was limited. Further, only one eyewitness, Royal, identified defendant as the shooter. We find that while there was sufficient evidence in this case to support defendant's conviction, the evidence in this case can be characterized as close.

Turning to the second factor, we note that the statement allegedly made by defendant to Rowan regarding his gang membership provides strong evidence as to the motive for the shooting, which is an integral part of the State's case. In *Tripp*, the court reversed and remanded a first-degree murder conviction based on the State's failure to provide statements to the defense which established motive. The court noted that "[m]otive evidence was an important ingredient in establishing guilt beyond a reasonable doubt, and we cannot say that the defendant could not accomplish a better defense given adequate time to prepare for this aspect of the State's case." *Tripp*, 271 Ill. App. 3d at 204.

While motive is not an essential element of murder, it is generally held that evidence indicating the defendant was a member of a gang or was involved in gang-related activity can provide a motive for an otherwise inexplicable act. *People v. Resendez*, 273 Ill. App. 3d 751, 652 N.E.2d 1357 (1995). Defendant's statement serves such a purpose in the present case. The prosecution in this case chose to use evidence of the defendant's membership in the Blackstones street gang to establish motive.

The record indicates that defendant was accused of shooting someone he did not know personally. Because of this, the evidence of gang membership and rivalry became an important part of the State's case. Moreover, defendant's undisclosed statement strongly corroborates the testimony of Royal, who was the sole eyewitness to the shooting. Even more significantly, the admission of the statement undermined the credibility of defendant in the eyes of the jury, substantially bolstering the State's case. We believe this evidence played a vital role in the jury's determination as to whether defendant was actually a gang member who was responsible for the shooting.

The next factor to be considered is the likelihood that prior notice would have helped the defense discredit the evidence. It is clear that prior notice of the existence of the statement would have provided the defense with an opportunity to move to suppress it, attempt to discredit it, or at least attempt to explain it. In the present case the defense had no such opportunity. Because the statement was not

disclosed, the defense was unable to offer evidence or modify its trial strategy in order to lessen the negative impact of the statement on defendant's case. We cannot say defendant would not have had a better defense given adequate time to prepare for this aspect of the State's case. See *Tripp*, 271 Ill. App. 3d at 204.

The final factor at issue is the willfulness of the State in failing to disclose the new evidence. There is little direct information in the record as to the willfulness of the State in this regard. The State characterizes its failure to disclose the statement as a mistake. Though it is difficult to believe the State was unaware of the existence of the statement prior to the day of trial, it is obvious the State knew the statement existed when the prosecutor utilized the statement to impeach defendant during cross-examination. However, even if the State learned of the testimony immediately prior to cross-examining defendant, it had the duty to first inform the defense. *Tripp*, 271 Ill. App. 3d at 205.

The purpose of the discovery provision is to afford the accused protection against surprise, unfairness and inadequate preparation. *Robinson*, 157 Ill. 2d at 79. The prejudice resulting from surprise, unfairness, and inadequate preparation, as well as from the lack of opportunity to investigate the circumstances surrounding undisclosed alleged statements, is "so incalculable that it cannot be conjectured by the court." *Tripp*, 271 Ill. App. 3d at 204.

■ Citing *People v. Moore*, 178 Ill. App. 3d 531, 533 N.E.2d 463 (1988), the State argues that defendant cannot persuasively claim prejudice because he did not request a continuance to investigate the alleged surprise statement, but instead proceeded with trial. We disagree, because the defense was unable to request a continuance before the damage had already been accomplished by the prosecution cross-examining the defendant with the undisclosed statement. See *Tripp*, 271 Ill. App. 3d at 203; *Weaver*, 92 Ill. 2d at 559-60.

In *Weaver*, the court remanded for a new trial because the damaging testimony occurred before it was possible for defendant to request a continuance. The court noted that each case must be decided on its own facts and that the defendant's failure to accept a continuance was not fatal to the defendant's position. *Weaver*, 92 Ill. 2d at 559-60. The *Tripp* court, faced with a similar factual situation, agreed with *Weaver*, holding that after a trial court overrules the defense objections, the failure to request a continuance should not automatically preclude review. *Tripp*, 271 Ill. App. 3d at 203.

In the present case, the record indicates that when the defense counsel objected to the State's cross-examination of defendant about

the subject statement, he was overruled by the trial court. The State began this line of questioning by asking defendant whether he told Detective Rowan that he was a gang member. At that point, it was too late to overcome the prejudicial effect of the evidence. The defense did not learn of the substance of this statement until the actual questioning began, and even before Rowan testified on rebuttal this information was before the jury. Moreover, no curative instruction was given and the trial court failed to eliminate the prejudice. See *Tripp*, 271 Ill. App. 3d at 203. As in *Weaver* and *Tripp*, the damage had already been done and a continuance would not have eliminated the prejudice against defendant. Accordingly, we reject the State's contention that defense counsel's failure to request a continuance has waived this issue for review.

We find that the State's discovery violation has resulted in undue prejudice to defendant, and we cannot say that the prejudice from this error was harmless beyond a reasonable doubt, and thus reversal is required. *People v. Cruz*, 162 Ill. 2d 314, 374, 643 N.E.2d 636 (1994). We will address the merits of defendant's other contentions which may remain at issue in a new trial.

II. Admissibility of Gang Evidence

■ Defendant contends that the trial court improperly admitted gang-related evidence and erred in failing to instruct the jury as to the limited use of such evidence. The State responds that the evidence was relevant and properly admitted and that any error with regard to the limiting instruction was harmless error.

Evidence of gang membership and gang activity is admissible when (1) it is relevant to an issue in dispute, and (2) its probative value is not substantially outweighed by its prejudicial effect. *People v. Gonzalez*, 142 Ill. 2d 481, 568 N.E.2d 864 (1991). Police testimony regarding gang activity requires a third element: the officer's testimony must qualify as expert opinion. See *People v. Langford*, 234 Ill. App. 3d 855, 858, 602 N.E.2d 9 (1992).

Generally, gang-related evidence is admissible to show common purpose or design, or to provide a motive for an otherwise inexplicable act. *People v. Wright*, 294 Ill. App. 3d 606, 614, 691 N.E.2d 94 (1998), quoting *People v. Smith*, 141 Ill. 2d 40, 58, 565 N.E.2d 900 (1990). Such evidence, however, is only admissible where there is sufficient proof that such membership or activity is related to the crime charged. *Smith*, 141 Ill. 2d at 39. The State can demonstrate gang membership through a defendant's own admission, through evidence that the defendant shouted a gang slogan before shooting, or through expert

testimony from a police officer specializing in gang crimes, where the basis of the officer's assertion is presented to the fact finder. *People v. Williams*, 262 Ill. App. 3d 808, 635 N.E.2d 653 (1994).

■ For purposes of remand, we note that in order to be admissible, a police officer's testimony as to gang evidence must meet the *Langford* test; it must qualify as expert testimony, it must be relevant and its probative value must outweigh any prejudice to the defendant. *Langford*, 234 Ill. App. 3d at 858. A review of the record indicates that only limited testimony was elicited from Officer Furlong establishing his "expertise" in the area of gang crimes. While Officer Furlong was asked if he was familiar with what gangs were located in the area of the shooting, a more detailed foundation is required.

In *Langford*, for example, the police officer testifying as a gang expert had worked as a gang crimes specialist for 10 years and was assigned to the area where the murder occurred. *Langford*, 234 Ill. App. 3d at 858. See also *People v. Fort*, 248 Ill. App. 3d 301, 618 N.E.2d 445 (1993) (police officer qualified as expert worked in gang crimes unit, was assigned to the organized crimes task force, and specialized in the investigation of the El Rukn street gang through surveillance, contact with informers and gang members); *People v. Jackson*, 145 Ill. App. 3d 626, 495 N.E.2d 1207 (1986) (officer qualified as expert based on five years' experience investigating, observing and infiltrating gangs).

Further, in the underlying case, Officer Furlong testified that several of defendant's acquaintances were Blackstones. Illinois courts have rejected the automatic assumption of guilt based on membership in undesirable groups, and a jury should not be permitted to draw insupportable inferences of guilt by association. See *People v. Colon*, 162 Ill. 2d 23, 642 N.E.2d 118 (1994) (McMorrow, J., dissenting). Without more, the evidence of defendant's gang-related acquaintances offered by Officer Furlong to support the motive theory was not sufficiently probative to outweigh its prejudicial value. See *Smith*, 141 Ill. 2d at 59. However, when presented along with defendant's statement regarding his membership in the Blackstones, and witness Royal's testimony regarding the exchange of hostile gang symbols prior to the shooting, a connection is established between the gang membership or activity and the crime charged, and evidence that defendant's companions were gang members becomes relevant. *Smith*, 141 Ill. 2d at 58.

■ Defendant also asserts that the trial court erred when it failed to caution the jury as to the limited use of the gang evidence at the time it was introduced. The following instruction was given, over defense objection, at the close of trial:

"Evidence has been received that the Defendant has been involved in conduct other than that charged in the Indictment. This evidence has been received on the issue of Defendant's motive and may be considered by you only for that limited purpose. It is for you to determine whether the Defendant was involved in that conduct, and, if so, what weight should be given to this evidence on the issue of motive."

See Illinois Pattern Jury Instructions, Criminal, No. 3.14 (3d ed. 1995) (hereinafter IPI Criminal 3d No. 3.14).

Defendant argues that because the trial court failed to advise the jury that the gang affiliation testimony was to be considered only on the issue of motive, the jury had no way of knowing that the "other conduct" referred to in the instruction was defendant's gang membership. Therefore, defendant contends, the jury was free to consider the testimony for substantive purposes.

The committee notes to IPI Criminal 3d No. 3.14 state that at the time the evidence that is the subject of the instruction is first presented to the jury, the committee recommends that an oral instruction should be given unless the defendant objects. IPI Criminal 3d No. 3.14, Committee Note, at 13 (Supp. 1996). In support of this recommendation, the committee notes quote the following from *People v. Denny*, 241 Ill. App. 3d 345, 360-61, 608 N.E.2d 1313 (1993):

" 'Because of the significant prejudice to a defendant's case that the admission of other crimes evidence usually risks, we hold that the trial court should not only instruct the jury in accordance with IPI Criminal [3d] No. 3.14 at the close of the case, but also orally from the bench (unless defendant objects) at the time the evidence is first presented to the jury.' " IPI Criminal 3d No. 3.14, Committee Note, at 17 (Supp. 1996).

We note that, for purposes of remand, other crimes evidence such as gang-related evidence is properly accompanied by both IPI Criminal 3d No. 3.14 at the close of trial and an oral limiting instruction at the time the evidence is first presented to the jury, unless the defendant objects, in accordance with the *Denny* holding.

III. Remaining Issues

■ Defendant argues that his conviction should be overturned based on insufficient evidence. However, we find that the record contained sufficient evidence to support the jury's verdict and do not find that reversal is warranted on this basis.

Specifically, defendant contends that there was no physical evidence linking him to the scene, the sole eyewitness had a motive to lie and was otherwise unreliable and defendant's alibi was unrefuted.

Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational fact finder could have found beyond a reasonable doubt the essential elements of the crime. *People v. Manning*, 182 Ill. 2d 193, 210, 695 N.E.2d 423 (1998); *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Manning*, 182 Ill. 2d at 210. A reviewing court will not substitute its judgment for that of the trier of fact in determining credibility, weight to be accorded the testimony and reasonable inferences to be drawn from the evidence. *People v. Sutherland*, 155 Ill. 2d 1, 610 N.E.2d 1 (1992).

Defendant argues that Damon Royal's testimony was the sole evidence linking defendant to the crime. However, the fact that Royal was the sole eyewitness to testify does not make his testimony less credible. The law is clear that the testimony of a single witness is sufficient to convict. *People v. Smith*, 278 Ill. App. 3d 343, 356, 662 N.E.2d 480 (1996). Defendant further states there was no physical evidence such as fingerprints or other forensic evidence that tied defendant to the car used in the shooting. However, we note that it is not the function of the reviewing court to retry a defendant. *People v. Boclair*, 129 Ill. 2d 458, 474, 544 N.E.2d 715 (1989). Clearly the jury chose to rely on witness testimony and other circumstantial evidence to convict defendant.

Defendant also challenges Royal's testimony as "unreliable and incredible." When the determination of a defendant's guilt or innocence depends upon the credibility of the witness and the weight to be given his or her testimony, it is for the trier of fact to resolve any conflicts in the evidence. *People v. White*, 209 Ill. App. 3d 844, 868, 567 N.E.2d 1368 (1991). This court's judgment cannot be substituted for that of the jury. *People v. Carter*, 168 Ill. App. 3d 237, 243-44, 522 N.E.2d 653 (1988). Accordingly, we find there was sufficient evidence to support the jury's verdict.

■ Defendant also claims the trial court erred in failing to suppress the lineup and his statement to police as fruits of an illegal arrest. However, no motion to quash the arrest and suppress evidence was made. We find it unnecessary to address these issues at this juncture and simply note that, upon remand, the defense will have the opportunity to make any motions it deems appropriate regarding these and any other relevant issues.

CONCLUSION

Because the evidence was sufficient to support a finding of guilt beyond a reasonable doubt, defendant faces no risk of double jeopardy and may be retried. See *Cruz*, 162 Ill. 2d at 374. Therefore, based on the State's failure to comply with discovery rules and the resulting prejudice to defendant, this cause is remanded for a new trial.

Reversed and remanded.

O'BRIEN, P.J., and TULLY, J., concur.