2023 IL App (1st) 210404-U

No. 1-21-0404

Order filed September 1, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 84 C 009282(03) |
| | ) | |
| JAMES ALLEN, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err when it denied James Allen's motion for leave to file a successive post-conviction petition because his claim of actual innocence was not free standing and he failed to establish cause and prejudice when alleging constitutional violations.

¶ 2    Defendant James Allen appeals the trial court's order denying his motion for leave to file a successive post-conviction petition. The issue presented is whether the trial court erred in denying defendant's motion because defendant failed to raise a viable claim of actual innocence or establish cause and prejudice for his failure to assert constitutional violations in earlier proceedings. For the reasons explained below, we affirm.

¶ 3                                    BACKGROUND

¶ 4      In June 1984, Chicago police discovered Carl Gibson shot to death on the 73rd Street exit ramp of the Chicago Skyway. The murder was linked to a major drug dealer, Charles Ashley, whom Chicago police were already investigating through a coordinated effort with the State's Attorney's office. During the investigation, Darryl Moore, who worked as an "enforcer" in the drug operation, placed a recorded call from the State's Attorney's office to suspect Henry Griffin, in which the two discussed details of the Gibson murder, including defendant's participation. The investigating Assistant State's Attorney listened on another phone and heard police officers arrest Griffin. Defendant was arrested later the same day.

¶ 5      A grand jury indicted defendant, Griffin, and Ashley on charges of conspiracy, solicitation to commit murder, and first-degree murder. Among others, the investigating ASA and Moore testified against defendant at trial. In July 1985, a jury found defendant guilty of murder and conspiracy and the trial judge imposed a natural life sentence. On direct appeal, this court affirmed defendant's murder conviction, but vacated the conspiracy conviction. *People v. Allen*, 184 Ill. App. 3d 438 (1989). Our supreme court denied leave to appeal. *People v. Allen*, No. 68786, 136 Ill. 2d 580 (1989).

¶ 6      On June 12, 2006, defendant filed his first post-conviction petition *pro se*, alleging prosecutors paid Moore to lie under oath; prosecutors coerced Griffin's confession; police misconduct; and the investigating ASA lied under oath and suborned false testimony from witnesses; all of which amounted to a violation of defendant's constitutional rights. Defendant supplemented this petition twice, once in May 2008 and once in April 2009, introducing "newly discovered evidence" to further support the original petition and a new claim of actual innocence. Defendant alleged that in January 2009, he received new evidence that "indicate[d] extensive

official and prosecutorial misconduct" that pertained to another murder, the murder of Robert Ciralski.[1] In this supplement, defendant introduced a signed confession from Robert Langford admitting to murdering Ciralski with an accomplice. Defendant argued this new evidence proved his innocence. The State filed a motion to dismiss, which the trial court granted as to all claims except defendant's claim regarding Darryl Moore, who had recanted his testimony shortly after trial. After a third stage evidentiary hearing on that count, the court denied defendant post-conviction relief and he appealed. This court affirmed the denial and granted counsel's *Finley* motion to withdraw. *People v. Allen*, 2015 IL App (1st) 132145-U.

¶ 7     In September 2016, defendant filed a *pro se* motion for leave to file a successive post-conviction petition, alleging his conviction was attained through constitutional violations, he is actually innocent, and he had ineffective assistance of counsel. In support, defendant submitted new affidavits from Langford that repeated Langford's confession to murdering Ciralski, but were now notarized, and another affidavit from an inmate who asserted that Langford admitted to killing Ciralski and that defendant was falsely convicted. The trial court denied leave, but we reversed and remanded because the trial judge had been previously disqualified during defendant's post-conviction proceedings in the Ciralski case. *People v. Allen*, No. 1-17-0901 (Aug. 24, 2020).

¶ 8     On remand, defendant filed a supplement to his motion for leave, introducing another affidavit from Langford, in which Langford identified his accomplice in the Ciralski murder as a man nicknamed "Kirby"—whose real name was also James Allen.[2] Defendant argued that the State prejudiced him when it introduced trial testimony that "Mr. Allen" was a suspect in the Ciralski murder, concealed exculpatory evidence, and that he is actually innocent. The court rejected

---

[1] In August 1984, several weeks after the Gibson murder but before defendant was arrested, Robert Ciralski, also known as "Doc," was killed. Defendant was convicted of that murder, and we affirmed on appeal. *People v. Allen*, 221 Ill. App. 3d 737 (1991).

[2] For the sake of clarity, we refer to Langford's accomplice as "Kirby" throughout this opinion.

defendant's claims and denied defendant's motion for leave to file the successive post-conviction petition. This timely appeal followed. Ill. S. Ct. R. 606, 651(a) (eff. July 1, 2017).

¶ 9                                    ANALYSIS

¶ 10     The Post-Conviction Hearing Act provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. 725 ILCS 5/122-1 *et seq.* (West 2020). Section 122-3 of the Act provides that any claim of a substantial denial of constitutional rights not raised in the original or an amended petition is waived. 725 ILCS 5/122-3. A ruling on either direct appeal or an initial post-conviction petition has *res judicata* effect with respect to all claims that were raised, or could have been raised, in either proceeding. *Id.*; *People v. Blair*, 215 Ill. 2d 427, 443 (2005). The statutory bar to raising a claim in a successive post-conviction petition that was not raised in the original or amended petition is only relaxed where fundamental fairness so requires. *People v. Daniel*, 379 Ill. App. 3d 748, 750 (2008). In determining whether fundamental fairness requires relaxation of the statutory bar, reviewing courts use the "cause-and-prejudice" test. 725 ILCS 5/122–1(f) (West 2020); *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002).

¶ 11     The Act provides for only one post-conviction petition, and therefore a petitioner must obtain leave of court before filing a successive petition. 725 ILCS 5/122–1(f); *People v. Robinson*, 2020 IL 123849, ¶ 43. For leave to be granted, petitioner must either establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding or set forth a "colorable claim of actual innocence." *People v. Edwards*, 2012 IL 111711, ¶¶ 22, 25-29. A claim of actual innocence applies a higher standard than is applicable to an initial petition at the filing stage. *Id.* Applying this higher standard comports with the legislative intent of the Act, Illinois Supreme

Court jurisprudence, and is congruent with analogous federal standards. *Id.* ¶ 28. We review the denial of leave to file a successive post-conviction petition *de novo. Id.* ¶ 30.

¶ 12                                  A. Actual Innocence

¶ 13    Defendant argues that the trial court erred in denying his motion for leave to file a successive post-conviction petition because he raised a colorable claim of actual innocence. In support, defendant presents the affidavits of Robert Langford, in which he confesses to the murder of Robert Ciralski, as evidence that police were informed of Langford's involvement in the Ciralski murder prior to defendant's trial and that the State suborned perjury and withheld evidence as a result. Defendant also presents the affidavit of Namore Smith,[3] who avers, essentially, that Langford's affidavit is accurate. The State contends that introduction of Langford's confession is barred by *res judicata* because it was raised in defendant's initial post-conviction petition, and alternatively, that defendant cannot satisfy the test for actual innocence. The trial court found that because these affidavits concern a different murder, they are irrelevant to defendant's claim of actual innocence in this case.

¶ 14    As an initial matter, the State contends that defendant may not assert his "free standing" claim of actual innocence because it is predicated on the same evidence defendant also uses to support his claims of constitutional violations. The State argues that because Langford's affidavit confessing that he and Kirby committed the Ciralski murder is used to support both defendant's actual innocence claim and constitutional claims, the actual innocence claim is not "free standing" as required under *People v. Hobley.* 182 Ill. 2d 404 (1998).

¶ 15    A claim of actual innocence is free standing when "the newly discovered evidence being relied upon 'is not being used to supplement an assertion of a constitutional violation with respect

---

[3] Smith's affidavit only attests to the veracity of Langford's confession to the Ciralski murder and provides no new information relevant to this case. Any reference to Langford's affidavits incorporates Smith's.

to [the] trial.'" *Id.* at 443-44 (citing *People v. Washington*, 171 Ill. 2d 475, 479 (1996)). While there has been general adherence to this rule, some cases have questioned the reasoning and policy of the *Hobley* rule. See *People v. Coleman*, 2013 IL 113307, ¶ 83 ("[A] free standing actual-innocence claim is independent of any claims of constitutional error at trial and focuses solely on a defendant's factual innocence in light of new evidence.") (internal quotations omitted); *People v. Martinez*, 2021 IL App (1st) 190490, ¶ 106 ("We find that *Hobley*'s fifth requirement for raising an actual innocence claim cannot be reconciled with our supreme court's more recent postconviction jurisprudence."). Others have examined the petitioner's claims despite the rule. See *People v. Wideman*, 2016 IL App (1st) 123092, ¶¶ 63-75 (court addressing both defendant's actual innocence claim and constitutional claim relying on same evidence); *People v. Calhoun*, 2016 IL App (1st) 141021, ¶¶ 28-36 (same). Whether his actual innocence claim is free standing or not, defendant has not presented sufficient evidence to satisfy the standard.

¶ 16    To set forth a colorable claim of actual innocence, a petitioner must support their successive petition with supporting documentation that makes it more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Robinson*, 2020 IL 123849, ¶ 44; *People v. Sanders*, 2016 IL 118123, ¶ 24. This new evidence in support of petitioner's claim must be newly discovered, material and noncumulative, and be of "such conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47; *Edwards*, 2012 IL 111711, ¶ 32. Evidence is considered newly discovered if it was not available at trial and could not have been discovered by petitioner earlier through an exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47; *Coleman*, 2013 IL 113307, ¶ 96. Material evidence is relevant and probative of the petitioner's innocence, and such evidence is non-cumulative if it adds, not just repeats, the information the fact finder heard at trial. *Coleman*, 2013 IL 113307, ¶ 96. Finally, the conclusive

character element is the most important element of the actual innocence claim and refers to evidence that "when considered along with the trial evidence, would probably lead to a different result." *Id.* ¶ 96.

¶ 17    Langford's affidavits are not newly discovered evidence for the reasons discussed below, and Langford's confession to an entirely different murder is not material or probative of defendant's innocence for this crime. Langford's averment that his accomplice Kirby told police of Langford's involvement in the Ciralski murder before defendant's arrest is likewise not probative of defendant's innocence in the Gibson murder. Defendant's arguments to the contrary are based on conclusory allegations, and he presents no evidence to link Langford's affidavits with his actual innocence. As a result, defendant has failed to show that this evidence is of such conclusive character that it "would probably lead to a different result" at trial. *Id.*

¶ 18                                B. Constitutional Violations

¶ 19    Defendant next argues that he established cause and prejudice because the State committed perjury during the proceedings where it elicited false testimony that defendant was a suspect in the Ciralski murder and committed a *Brady* violation when it failed to disclose material exculpatory evidence. The State first responds that defendant's claims are again barred by *res judicata*, because he raised or could have raised similar claims in his initial petition. In the alternative, the State argues that defendant forfeited these claims because the information was discoverable when he litigated his initial post-conviction petition and defendant's assertions are unsupported by evidence.

¶ 20    A court will grant leave to file a successive post-conviction petition when the defendant establishes cause and prejudice for failing to raise the claim in his original petition. *People v. Simpson*, 204 Ill. 2d 536, 552 (2001). To show cause, the defendant must identify an objective

factor that impeded his ability to raise a specific claim during his initial post-conviction proceedings. 725 ILCS 5/122-1(f); *People v. Bailey*, 2017 IL 121450, ¶ 14. To show prejudice, the defendant must demonstrate that the claim not previously raised in his initial post-conviction proceedings "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f); *Bailey*, 2017 IL 121450, ¶ 14.

¶ 21    As to both his perjury and *Brady* claims, defendant contends that he has established cause because Langford's affidavits were written well after trial and he had no reason to investigate Langford "as the true perpetrator of the Ciralski murder" prior to 2009. "[T]he mere fact that these affidavits are dated after the time of trial does not render the evidence newly discovered." *People v. Harris*, 206 Ill. 2d 293, 301 (2002). Whenever written, defendant is required to demonstrate an *objective factor* which impeded his ability to bring the claim at the original trial or in his initial petition. *People v. Nichols*, 2021 IL App (2d) 190659, ¶ 19.

¶ 22    Defendant presents multiple statements by Robert Langford: one unnotarized confession from 2009 and three notarized affidavits from 2010, 2016, and 2018. We find that defendant could have discovered the evidence in Langford's affidavits well before he filed his initial post-conviction petition. In his motion for leave to file his successive petition in September 2016, defendant stated that after being arrested in connection with the Gibson murder, the investigating ASA asked him if he had heard the name "Robert Langford or Lawford" in connection with the Ciralski murder. Defendant stated that he knew Ciralski operated a drug store in his old neighborhood and had heard from neighbors that Langford had killed Ciralski but that defendant did not personally know who Langford was. After defendant exchanged this information with the ASA, a detective confirmed that Langford was a suspect in the Ciralski murder.

¶ 23 Subsequently, in defendant's supplement to his motion for leave, filed in November 2020, defendant stated that he learned Langford was a suspect in the Ciralski murder prior to his arrest in August 1984 when visiting his associate Lance Bell, who lived across the street from Ciralski's drug store. The record indicates defendant later solicited Bell to testify as an alibi witness, and both the prosecution and defense listed Bell as a potential witness, though he was never called at trial. Defendant further stated that "police were combing the neighborhood asking neighbors if they knew a Robert Langford" in connection with the Ciralski murder. Defendant goes as far to say that it was widely known that Langford was a suspect and even states that he was personally approached by police and asked if he knew a Robert Langford.

¶ 24 These facts directly contradict defendant's contention that he "knew nothing about the Ciralski murder" or that "even with the highest level of diligence," defendant "would not have been able to discover this other James Allen or Langford's involvement in the Ciralski case." Soliciting a murder confession from a man who had not yet, and would never be, convicted of the crime would likely be impossible without his cooperation. After all, no amount of due diligence can force a witness to violate their fifth amendment right to avoid self-incrimination. U.S. Const., amend. V; *People v. Molstad*, 101 Ill. 2d 128, 135 (1984). However, in addition to Langford's confession, defendant also relies upon Langford's assertion that Kirby spoke to the police, naming Langford as Ciralski's murderer before defendant's trial for the Gibson murder. This became Langford's motive to murder Kirby, a crime for which he was convicted and sentenced to life without the possibility of parole in 1987, a conviction which this court upheld. *People v. Langford*, 234 Ill. App. 3d 855 (1992). Since then, Langford's location has been a matter of public record.

¶ 25 When confronted with situations where potentially exculpatory witnesses were available and the defense undertook no effort to contact, locate, or subpoena such individuals, our supreme

court has placed that burden on the defense. See *Coleman*, 2013 IL 113307 (holding that the testimony of two witnesses were not newly discovered where the witnesses were arrested in connection with the underlying offense and defendant discussed one witness with defense counsel prior to trial.); *Edwards*, 2012 IL 111711 (concluding that even though witnesses likely would not have been persuaded to testify, defense made no attempt to subpoena them and gave no explanation for the failure to expend efforts to satisfy due diligence).

¶ 26 Defendant argues that because he did not receive the notarized 2010 affidavit until his initial petition had reached the third stage, and because his public defender had this affidavit and did not present it to the court, the "cause" element is satisfied. Defendant's claims supported by Langford's affidavit had been dismissed at the second stage. To the extent that defendant claims his public defender's failure to present the affidavit is sufficient to satisfy the "cause" element, ineffective assistance of post-conviction counsel is not a basis for relief under the Act. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). Further, cause is specifically defined as an "objective factor *external to the defense*" which impeded defendant's ability to raise a claim in an earlier proceeding. (Emphasis added.) *Id.* at 279; see also *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Pitsonbarger*, 205 Ill. 2d at 462.

¶ 27 Defendant has presented no evidence, and we can find none in the record, to suggest any attempt was made to locate or communicate with Robert Langford between 1984 and 2009. Because no efforts were ever made by defendant, and he has not presented an objective factor that prevented him or his counsel from investigating Langford, we find defendant has not adequately alleged facts demonstrating "cause." See *People v. Smith*, 2014 IL 115946, ¶ 34.

¶ 28 Defendant has also failed to establish prejudice. Defendant argues that the jury was prejudiced by the investigating ASA's testimony as it related to the Ciralski case. Defendant details

numerous additional "facts" supported by Langford's affidavits that allegedly prove the investigating ASA's testimony was false, but all amount to conclusory assertions, and none are supported by either the affidavits or the record. Moreover, defendant's arguments on this point are inseparably interwoven with allegations raised and dismissed in his initial petition and, for that reason, are waived.

¶ 29    Defendant also argues that the jury was prejudiced by the ASA's testimony that defendant was a suspect in the Ciralski murder. Defendant relies on the 2016 averment that Kirby told the police that Langford killed Ciralski before defendant's trial, and therefore the investigating ASA's testimony was knowingly false. Langford's 2016 affidavit does not provide a date for when Kirby made this revelation, and that this allegation is not repeated in Langford's prior or subsequent affidavits.[4] Defendant points to nothing in the record or any other supporting document to provide confirmation of the sequence of events, without which defendant's claim that police knew about Kirby's culpability in the Ciralski murder *before* defendant's trial are impossible to verify. As the trial court noted below, it is incumbent upon the petitioner to substantiate his allegations with specific facts establishing the falsity of the trial testimony. *People v. Martin*, 46 Ill. 2d 565, 568 (1970). Defendant has not done so. The evidence presented does not show prejudice that worked to defendant's substantial disadvantage or infected his trial with an "error of constitutional dimensions." *People v. Hudson*, 195 Ill. 2d 117 (2001) (quoting *Murray*, 477 U.S. at 494). To the extent that defendant's perjury claims are not barred by *res judicata*, we find that they have failed to meet the requirements of the cause-and-prejudice test. 725 ILCS 5/122-1(f).

---

[4] Langford's 2016 affidavit says that "before Allen was arrested for Robert Ciralski [sic] murder my accomplice in the Robert Ciralski murder was Mr. Kirby, he'd told westside detectives that on the evening of August 1, 1984 hours prior to the robbery and murder of Robert Ciralski, I robbed and shot a man twice on California and Monroe with the same gun I used to rob and murder Robert Ciralski." Defendant was never "arrested" for the Ciralski murder as he was already serving his sentence for the Gibson murder when he was indicted. This statement therefore provides no clarity as to when Kirby spoke with police.

¶ 30    Considering defendant's *Brady* claim, defendant claims he was prejudiced when the State withheld that Kirby was a suspect in the Ciralski murder, because evidence of another James Allen would have undermined the credibility of defendant's statement to the police. To succeed on a *Brady* claim, a defendant must show that (1) undisclosed evidence is favorable to him because it is either exculpatory or impeaching; (2) the evidence was suppressed by the state either willfully or inadvertently; and (3) the accused was prejudiced because the evidence is material to guilt or punishment. *People v. Beaman*, 229 Ill. 2d 56, 73-74 (2008).

¶ 31    We need not examine the elements of a *Brady* claim, however, because defendant has not pleaded specific facts or supplied supporting documentation confirming the existence of "undisclosed evidence." As noted above, Langford's affidavits fail to establish when Kirby spoke with police. Defendant provides no evidence that this occurred before defendant's trial. In a motion to file a successive post-conviction petition, only well-pleaded facts in the petition and supporting affidavits are to be taken as true. *Wideman*, 2016 IL App (1st) 123092, ¶ 59 (citing *Pitsonbarger*, 205 Ill. 2d at 467). Defendant's argument hinges upon the occurrence of a specific event at a specific time, yet none of the evidence in his petition or in the record provides that specific time. Defendant's *Brady* claim must necessarily fail because defendant has not shown there was even evidence for the State to suppress. Because defendant has not met the prejudice prong of the cause-and-prejudice test as to his *Brady* claim, such a claim cannot support a successive post-conviction petition under the Act. 725 ILCS 5/122-1(f).

¶ 32    For the foregoing reasons, we conclude that the trial court properly denied defendant's motion for leave to file his successive post-conviction petition.

¶ 33    Affirmed.