SECOND DIVISION

DECEMBER 30, 1999

No. 1-97-3593 (consolidated with 1-97-3666, 1-97-3694 & 1-97-

3744)

THE PEOPLE OF THE STATE OF ) Appeal from the

ILLINOIS, ) Circuit Court

) of Cook County

Plaintiff-Appellee, )

)

v. ) No. 95 CR 20339

)

RONARD PARKER, RUSSELL YOUNG, ) The Honorable

& MICHAEL GREEN, ) Henry R. Simmons

) Judge Presiding.

Defendants-Appellants. )

PRESIDING JUSTICE COUSINS delivered the opinion of the 

court: 

Codefendants Ronard Parker, Michael Green and Russell Young each were charged by indictment with 1 count of attempt (murder), 1 count of heinous battery, 5 counts of aggravated battery, 14 counts of aggravated kidnapping, 2 counts of kidnapping, 2 counts of aggravated unlawful restraint, and 1 count of unlawful restraint.  After unsuccessful motions to quash arrest and suppress evidence, the defendants received simultaneous but severed bench trials.  

The trial court found the defendants guilty on all counts.  The judge sentenced Mr. Parker and Mr. Young each to an extended term of 35 years on the charge of attempt (murder), to run concurrently with a 35-year sentence for heinous battery and a 15-year sentence for aggravated kidnaping.  Mr. Green received a sentence of 25 years for attempt (murder), to run concurrently with 25 years for heinous battery and 15 years for aggravated kidnapping.  The remaining counts were merged.  The defendants now challenge their convictions in this consolidated appeal.

All the defendants appeal on the basis that: (1) the prosecution did not prove that the defendants intended to kill the victim, since they allowed him to leave; and (2) it was reversible error to introduce gang evidence, since the crime was not gang-related.  Defendants Young and Green additionally contend that: (3) there was insufficient evidence to make Mr. Young accountable for the aggravated kidnapping and Mr. Green accountable for any of the crimes; and (4) their convictions must be overturned because the trial court erred in denying their motion to quash arrest and suppress evidence.  Finally, defendant Green argues that: (5) it was error for the trial court to admit his conversation with a detective as rebuttal evidence, since Mr. Green himself did not testify.

We affirm in part and reverse in part.

BACKGROUND

At trial, the victim, Wilbur Upshaw, testified as follows.  Between 6 p.m. and 7 p.m. on July 2, 1995, Mr. Upshaw was walking near a tire shop where he worked as a mechanic.  Mr. Parker pulled up next to Mr. Upshaw in a van along with some other people.  Although they were not friends, Mr. Upshaw had known Mr. Parker for about nine months by the nickname "Assassin."  He knew that Mr. Parker frequented the Chicago Housing Authority (CHA) building at 41st and Federal Streets.  At the time, Mr. Upshaw had a girlfriend who lived in the building, and he sometimes saw Mr. Parker there when he visited her.  Mr. Parker had recently given him his car to fix.

Mr. Parker asked Mr. Upshaw if he was called "Peanut."  When Mr. Upshaw said "yes," Mr. Parker called out to his companions, "Here he is here."  Mr. Parker asked where his car and his money were.  Mr. Upshaw said that he had taken the car to a shop at 16th and Michigan to be repaired and he volunteered to call the mechanic who was working on the car.  Mr. Parker responded "No. We're not going to do this. You're going with me."  Mr. Upshaw said he wasn't going anywhere.

At this point Mr. Parker and his companions grabbed Mr. Upshaw and forced him into the van.  During the struggle Mr. Upshaw's shirt was ripped off.  Someone kicked Mr. Upshaw, fracturing his jaw.  Mr. Parker sat on Mr. Upshaw with one hand holding a screwdriver and the other hand around his neck.  He threatened to stab Mr. Upshaw with the screwdriver if he moved.

They drove to the parking lot of the CHA building at 41st and Federal and forced Mr. Upshaw out of the van.  The men with Mr. Upshaw took his shoes and threw them onto the railroad tracks.  When a CHA police car drove by, Mr. Parker made Mr. Upshaw hide, threatening to kill him if he made any noise.  

Shortly thereafter Mr. Green and Mr. Young arrived on the scene.  Mr. Young looked for a tire iron but could not find one and grabbed a baseball bat instead.  Mr. Parker said that he needed a car to put Mr. Upshaw in and asked them to get keys to the car from the building across the street.  Mr. Young and some companions took Mr. Upshaw across the street, threatening to hit him with the bat if he did not move fast enough.  They went to the hallway of the building near the stairs.  Mr. Young and others stood guard over Mr. Upshaw with the bat, while someone went to get the keys.  When they found the keys about 10 minutes later, they went back across the street.  Mr. Upshaw was struck once with the bat on the way over and once on the way back.

Mr. Young and Mr. Parker opened the trunk of a gray, four-

door Chevrolet car near the van and put Mr. Upshaw inside.  They shut the lid and told Mr. Upshaw that if he made any noise they would shoot up the trunk.  Mr. Parker ordered someone to shoot if Mr. Upshaw made noise.  After 20 to 30 minutes Mr. Parker reopened the trunk.  Mr. Upshaw was ordered to face away from the attackers, and Mr. Young told him that if he looked around he would hit him with the bat.  Mr. Green was also there.  Mr. Upshaw heard someone say that they were going to "blow up his butt."  He attempted to turn around and was hit with the bat. 

Someone put an M-80 down the back of Mr. Upshaw's pants and closed the trunk.  Mr. Upshaw tried to remove it, but it exploded in his hand, blowing off three of his fingers.  The trunk flew open.  Mr. Upshaw screamed that they had "messed up his hand," whereupon his assailants began to laugh.  Mr. Parker and Mr. Green then told him to get out and "run toward 41st Street and don't stop."  As Mr. Upshaw ran away, other people threw stones at him.  His clothes were on fire and fell off him as he ran.

Mr. Upshaw found help in a nearby revival tent, where someone called an ambulance and the police.  He was taken to Cook County Hospital, where he remained for over two months.

The parties stipulated that Dr. A. Hall would testify that he was a doctor at Cook County Hospital who treated the victim, whose injuries included three missing fingers, a broken jaw, broken facial bones, burns to the buttocks, both hands and the lower back and numerous abrasions and bruises.  Mr. Upshaw had to undergo many surgeries, including having his rectum repaired and having muscle transplanted from his shoulder to his hand.  When Mr. Upshaw was admitted to the hospital, cocaine was found in his system.  Mr. Upshaw denied using cocaine on the date of the attack but admitted that he had used cocaine two days earlier.

It was also stipulated that a forensic expert would testify that the injury to Mr. Upshaw's hand was caused by a flammable device known as an M-80 to an M-1000.

Chicago police officer Eugene Offet testified that he and two other officers were called to 4227 South State Street at about 11:15 p.m..  Mr. Upshaw was there being attended to by paramedics.  In the emergency room, Mr. Upshaw related what had happened to him.  According to Officer Offet, Mr. Upshaw gave him the nicknames of four of the people that attacked him: "Assassin," "Black Mike," "Rell" and "Russ."  Officer Offet knew the defendants to be people with those nicknames who hung around the building at 41st and Federal.

The next day, Officer Offet went to the building at 41st and Federal.  There he found the defendants with four other men, including Mr. Green's brother Darrell (whose nickname is "Rell"), and arrested them all.  He located the gray, four-door car and saw that the trunk lid had been blown open.  There were bloodstains near the car, burned bloody clothing inside the trunk, and more clothing 15 to 30 feet away from the car.  There was a "For Sale" sign in the window of the car.  On the sign was written "2000 Assassin 20039."  

At the police station, Mr. Parker allegedly told Officer Offet that "they had gotten into it with this guy Wilbur about some money he owed them, and he refused to pay up."  He realized the situation had gotten out of control, he added, when he saw the extent of the victim's injuries.  Polaroid photos were taken of the arrestees at the station.  Mr. Upshaw picked out the defendants' photos from the array.  The other arrestees were permitted to leave.  The prosecution was unable to produce these photos at trial. 

On cross-examination, however, Mr. Upshaw testified that although he had identified the defendants from photographs, he could not have given Officer Offet the nicknames of Mr. Green and Mr. Young, because he did not know them.  He thought that he told Offet that one of the attackers was named "Assassin" and that one had braids (as does Mr. Young).

Detective John Griffin testified that he talked with the defendants at the police station at around 11:15 p.m. on July 3, 1995.  Each defendant, when asked, allegedly admitted being in a gang, the Gangster Disciples.  Mr. Young did not speak any further.  Mr. Parker said he was a coordinator for the gang.  He said that he knew "Peanut" but denied any knowledge of the incident.  Mr. Green also professed ignorance.  

Barbara White testified that she was working as a security guard at the building at 41st and Federal at the time of the attack.  On July 2, 1995, she worked form 4 p.m. until midnight.  From her booth she could see one of the two entranceways to the building.  She knew Mr. Parker by sight.  That evening she saw a naked man run through the parking lot, but she did not see anything else out of the ordinary.  Her partner called the police when they saw the man run past.  On cross-examination and over objection, she said she knew that Gangster Disciples would hang around the building.  In closing argument the prosecutor suggested that Ms. White had testified untruthfully out of fear of the Gangster Disciples.  The trial court overruled a defense objection to that argument.

Mr. Green's sister, Aisha Green, and his girlfriend, Sandra Williams, both testified that he had been at home at the time of the attack.  Darrell Green said that his brother had picked him up on his motorbike on July 3 and they went to 41st and Federal, where they were arrested along with his brother's friends.  He did not know why they had been arrested until later when someone told him it was for an attack the previous night.  Darrell was released.  Detective Griffin testified as a rebuttal witness that he had talked with Michael Green on July 4, 1995, and that according to his notes Mr. Green had not said that he was at home, but that he was riding his brother's bicycle on July 2, 1995.

The trial court found the defendants guilty on all counts.  The judge sentenced Mr. Parker and Mr. Young each to an extended term of 35 years on the charge of attempt (murder), to run concurrently with a 35-year sentence for heinous battery and a 15-year sentence for aggravated kidnaping.  Mr. Green received a sentence of 25 years for attempt (murder), to run concurrently with 25 years for heinous battery and 15 years for aggravated kidnapping.  The remaining counts were merged. 

All the defendants appeal on the basis that: (1) the prosecution did not prove that the defendants intended to kill Mr. Upshaw, since they allowed him to leave; and (2) it was reversible error to introduce gang evidence, since the crime was not gang related.  Defendants Young and Green additionally contend that: (3) there was insufficient evidence to make Mr. Young accountable for the aggravated kidnapping and Mr. Green accountable for any of the crimes; and (4) their convictions must be overturned because the trial court erred in denying their motion to quash arrest and suppress evidence.  Finally, defendant Green argues that: (5) it was error for the trial court to admit his conversation with Detective Griffin as rebuttal evidence, since Mr. Green himself did not testify.

ANALYSIS

  Mr. Green argues that all his convictions must be reversed because there was insufficient evidence to hold him accountable for the relevant crimes.
  
Mr. Young contends that his convictions related to the initial kidnapping of Mr. Upshaw near the tire shop must be reversed.  For the reasons that follow, we agree here with Mr. Green and Mr. Young.

A

A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he or she solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense.  720 ILCS 5/5-2(c) (West 1996).  A defendant's presence at the scene of a crime is one factor that can, along with other circumstances, show a design to aid in the offense and, hence, accountability. 
People v. Morgan
, 67 Ill. 2d 1, 8-9, 364 N.E.2d 56, 60 (1977).  However, merely being present at the scene of a crime, even with knowledge that a crime is being committed, is insufficient to establish accountability. 
People v. Bolar
, 229 Ill. App. 3d 560, 562, 593 N.E.2d 156, 158 (1992).

Resolving all credibility issues in favor of the prosecution, the evidence shows only that Green was present and knew of the illegal activity.  This is simply not enough to make him criminally liable.  There is no evidence that he acted in furtherance of the crimes, no evidence that he directed involvement and acted at the behest of the principal.  Mr. Upshaw’s only testimony concerning Mr. Green was that he saw him arrive on the scene, that he saw him standing by the gray car, and that he told Mr. Upshaw to run.  

According to Mr. Upshaw's testimony, it was Mr. Young that hit him with a baseball bat several times and held him prisoner in the stairwell.  Mr. Upshaw's direct testimony was that Mr. Green was not among the people who held him prisoner:

"Q. Now, these other guys [other than Mr. Young] that were trying to keep you from getting away from that stairwell at 4101 Federal, are any of those guys in court today?

A. No, they isn't."

Mr. Young and Mr. Parker were the ones who took him against his will to the other building.

"Q. How many people were with Russell Young as he crossed the street with you?

A. Him and Assassin.

Q. Where was Michael Green at the time you were crossing the street with Russell Young and Ronard Parker?

A. I didn't see him."

Mr. Upshaw testified that Mr. Young and Mr. Parker were the ones who put him in the trunk.

"Q. Now, who was it that put you in the trunk of the car?

A. Assassin and the guy with braids in his hair." 

Mr. Upshaw did not testify that Mr. Green actually did anything to take part in or associate himself with the crime.  When Mr. Green's attorney pointed this out while arguing his motion for a new trial, the prosecutor's response was: "There was more than just mere presence.  The defendant took an active part in this crime ordering the victim to flee after injuries took place."  Suffice it to say that his urging the victim to flee in no way shows that Mr. Green aided or abetted the assault.

It is true that at one point Officer Offet said that Mr. Upshaw had told him that Mr. Green was the one who hit him with the bat.  But the court specifically noted that this testimony was being introduced for impeachment in Mr. Young's case and would not be considered against Mr. Green. 

A conviction should only be set aside if the evidence is so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt.  
People v. Slim
, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989).  In the instant case, since there is no evidence that Mr. Green participated in the attack in any way, his conviction must be reversed.

B

Mr. Young argues that his convictions regarding the initial kidnapping of Mr. Upshaw must be reversed for lack of evidence.  Once again, we agree.

Mr. Young was convicted of 14 counts of aggravated kidnapping.  Seven of those convictions are based the transportation of Mr. Upshaw against his will from the area near the tire shop to the building at 41st and Federal.  According to Mr. Upshaw's testimony, Mr. Young was not among the group that abducted him from the street. 

"Q. On the 2nd of July of 1995 when you first saw Ronard Parker, it's your testimony that you didn't know any of the people who were with him?

A. No.

Q. At that time, was he with either of the other two men that are here today?

A. No."

There is also no evidence that he planned or directed the initial abduction, or even knew of it, and accordingly we order the guilty findings on those counts to be vacated.

However, there is ample evidence to support the other aggravated kidnapping counts.  These counts are based on the secret confinement of Mr. Upshaw in the trunk, with the aggravated unlawful restraint and battery felonies acting as aggravation.  These facts also provide a basis for the two kidnapping convictions.

II

All three defendants argue that their convictions for attempt (murder) must be reversed because the State's evidence failed to establish beyond a reasonable doubt that they acted with the intent to kill Mr. Upshaw.  For the following reasons, only Mr. Green's attempt (murder) conviction is reversed.  

The Criminal Code of 1961 defines "attempt" as follows: "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."  720 ILCS 5/8-4(a) (West 1996).  In order for the defendants in this case properly to be convicted of attempt (murder) the evidence must show beyond a reasonable doubt that they intended to kill Mr. Upshaw.  
People v. Jones
, 184 Ill. App. 3d 412, 429, 541 N.E.2d 132, 142 (1989).  Intent to cause great bodily harm would have supported a conviction for murder if Mr. Upshaw had died of his injuries (
People v. Redmond
, 265 Ill. App. 3d 292, 301, 637 N.E.2d 526, 534 (1994)), but intent to inflict great bodily harm is not sufficient to support a conviction for attempt (murder).  
People v. Wagner
, 189 Ill. App. 3d 1041, 1045, 546 N.E.2d 283, 285-86 (1989); 
Jones
, 184 Ill. App. 3d at 429, 541 N.E.2d at 143.

Intent is a state of mind and thus is usually difficult to establish by direct evidence. 
People v. Williams
, 165 Ill. 2d 51, 64, 649 N.E.2d 397, 403 (1995).  Accordingly, specific intent to kill may be, and normally is, inferred from the surrounding circumstances
, such as the character of the attack, the use of a deadly weapon (
Jones
, 184 Ill. App. 3d at 429, 541 N.E.2d at 142), and the nature and extent of the victim's injuries (
Williams
, 165 Ill. 2d at 64, 649 N.E.2d at 403).

In determining whether the evidence is sufficient to support a conviction of attempt (murder), the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the elements of the offense were established beyond a reasonable doubt. 
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985), 
rev'd
 
on
 
other
 
grounds
,
 
Bracy v. Gramley
, 519 U.S. 899, 138 L. Ed. 2d 97, 117 S. Ct. 1793 (1997).

In the instant case, the State argues that intent to kill has been shown by the fact that the defendants used a deadly weapon in such a way as to have a direct and natural tendency to destroy Mr. Upshaw's life.  The record does not contain expert testimony concerning the destructive power of an M-80.  But from the amount of damage it did to Mr. Upshaw's hand, it seems a fair inference that it could have killed him.  

 Mr. Upshaw's injuries, moreover, were extensive in nature though evidence was not presented that they were life-

threatening. 
 See 
Jones
, 184 Ill. App. 3d at 430, 541 N.E.2d at 143 (conviction for attempt (murder) reversed in part because "Although [the victim's] injuries were serious, there was no evidence presented that they were life-threatening").  

The defendants contend that since they had the opportunity to kill Mr. Upshaw and did not, but, rather, told him to flee, they cannot have had the requisite intent for attempt (murder).  We note that the fact that the defendants allowed the victim to escape does not automatically exculpate them.  Under Illinois law, if the defendants intended to kill Mr. Upshaw when they placed him in the trunk, it does not matter if they changed their minds later.  Abandonment is not a defense to criminal attempt in Illinois.  
People v. Winters
, 151 Ill. App. 3d 402, 406, 502 N.E.2d 841, 843 (1986).  However, this does not mean that a defendant's conduct after the alleged attempt (murder) is irrelevant.  The conduct after the purported attempt is among the surrounding circumstances that one may look to in trying to determine if there was intent to kill at the time of the substantial step.  An instructive case is 
People v. Mitchell
, 105 Ill 2d 1, 473 N.E.2d 1270 (1984).  In 
Mitchell
, a mother severely beat her 17-month-old daughter.  After the child had a seizure and passed out, the defendant applied a cool cloth to her head and then took her to the hospital.  The injuries were so severe that the doctor did not think the child would live.  Nevertheless, she survived.  The defendant was convicted of two counts of aggravated battery and two counts of attempt (murder).  The appellate court reversed the attempt (murder) convictions and the supreme court affirmed.

Factors that would ordinarily support an inference of intent to kill were present in 
Mitchell
.  It is beyond question that the injuries were life-threatening.  Nevertheless, the supreme court held that the defendant's actions in trying to revive the child and then taking her to the hospital were qualifying facts that overcame the inference of intent to kill.  Another relevant circumstance was that the defendant could easily have killed the child but did not.  See 
People v. Thomas
, 127 Ill. App. 2d 444, 262 N.E.2d 495 (1970)
.  The 
Mitchell
 court wrote:

"There was ample opportunity for her to complete her crime if, in fact, she intended to kill the child.  Further, following Shannon's loss of consciousness, defendant applied a cool cloth and ultimately took her to the hospital for emergency medical attention, actions which are not consistent with an attempt to murder.  This court has previously acknowledged that abandonment of the intent to kill, once the elements of attempted murder are complete, is no defense to the crime. [Citation.]  Here, however, considering all of the circumstances, the proof is, in our judgment, simply insufficient to establish beyond a reasonable doubt that defendant possessed the requisite intent to kill. [Citations.]"  
Mitchell
, 105 Ill. 2d at 10, 473 N.E.2d at 1274.

The supreme court in 
Mitchell
 found the following three factors determinative in overcoming the inference of intent to kill: (1) the defendant attempted to revive the child after inspecting the injuries; (2) the defendant took her child to the hospital; and (3) the defendant could easily have killed the child had she intended to do so.

While the circumstances in this case are similar to those in 
Mitchell
, the evidence in this case is sufficient to support a conviction of attempt (murder) against Mr. Parker and Mr. Young because the evidence was sufficient to establish that they beat Mr. Upshaw severely, locked him in a car trunk with an incendiary device powerful enough to blow off the trunk's lid and three of his fingers.  His rectal area was also severely damaged by the explosion.  While Mr. Upshaw was not killed, and was told to get out of the truck and run, they did not take him to the hospital.  Thus, under the applicable standard of review, there is amply evidence to support an inference that Mr. Parker and Mr. Young intended to kill Mr. Upshaw.  However, as previously stated, the State proved only that Mr. Green was present.  Mere presence is not proof of guilt. 
Bolar
, 229 Ill. App. 3d at 562, 593 N.E.2d at 158
.  
Green's attempt murder conviction is reversed and the aggravated kidnapping based thereon vacated. Accordingly, the attempt (murder) convictions and the aggravated kidnapping counts based thereon are affirmed as to Parker and Young only.

III

All three defendants also contend that the trial court committed reversible error in admitting testimony and argument concerning their affiliation with a street gang, in view of the fact that the crime was not gang related.  We hold that defendant Young has waived this issue since the issue was not included in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988).  It is unnecessary for us to consider the issue as to Mr. Green.

Mr. Parker objected to the introduction of gang testimony by two witnesses.  First, Detective Griffin testified that each of the defendants admitted to being in the Gangster Disciples and that Mr. Parker said he was a "coordinator" for that gang.  Second, the prosecution elicited testimony from Barbara White, the security guard, that she knew that Gangster Disciples would frequent the building at 41st and Federal where she worked.

The trial court also overruled Mr. Parker's objection to the prosecution's suggestion in closing argument that Ms. White testified falsely at trial out of fear of retaliation by the Gangster Disciples.

Evidence of gang membership may be admitted if it is relevant to an issue in dispute and its probative effect is not substantially outweighed by its prejudicial effect.  
People v. Matthews
, 299 Ill. App. 3d 914, 922, 702 N.E.2d 291, 297 (1998).   In this case, the State argues that the defendants' common gang membership is relevant to whether they were engaged in a common scheme so as to make them liable for one another's conduct.  It is true that gang related evidence often may be admitted to show common purpose or design.  
Matthews
, 299 Ill. App. 3d at 922, 702 N.E.2d at 297.  However, such evidence may only be admitted if there is sufficient proof that such membership or activity is related to the crime charged.  
Matthews
, 299 Ill. App. 3d at 922, 702 N.E.2d at 297.  In this case there was no evidence suggesting a relation between gang membership or activity and the crime charged.  Accordingly, the trial court erred in admitting Detective Griffin's testimony that Mr. Parker was in a gang and the question to Ms. White as to whether she knew Mr. Parker was in a gang.

Despite the fact that we find that the trial court erred in failing to sustain Mr. Parker's objections to the testimony concerning his gang membership, we hold that such error was harmless in light of the overwhelming evidence of Mr. Parker's guilt. 
People v. Maldonado
, 240 Ill. App. 3d 470, 477, 608 N.E.2d 499, 504, (1992).

Finally Mr. Parker argues that the trial court committed reversible error in allowing the following comment in closing argument:

"At this point I'll address the security guard that came in, Judge.  Please keep in mind and I don't have to remind the court with all your experiences.  This is an unarmed security guard that works at a project building at 41st and Federal that is controlled by the Gangster Disciples.  And at this time, it's appropriate that all 3 defendants admitted to being Gangster Disciples to the officers.  And in fact, Mr. Parker is a coordinator with the Gangster Disciples.

* * *

That could be the reason why the security guard didn't see--didn't see things or didn't bother to see things.  And would be my contention from her testimony, Judge, that she was not credible.  That given the conditions that she has to work under each and every day and every night out there, that it wouldn't be in her best physical interest or well being to testify against these three witnesses."

The State is given wide latitude in closing arguments 
(
People v. Davis
, 104 Ill. App. 3d 512, 516, 432 N.E.2d 1134, 1137 (1982)), but arguments must be based facts in evidence or reasonable inferences therefrom (
People v. Hudson
, 157 Ill. 2d 401, 441, 626 N.E.2d 161, 178 (1993)).  The above argument was based on the fact that Mr. Parker was in a gang, which should not have been in evidence, and the assertion that Ms. White worked at the Gangster Disciple-controlled building at the time of her testimony.  The record shows that Ms. White was unemployed at the time of trial.  Consequently, the above argument was not based on the evidence, and Mr. Parker's objection to it should have been sustained. 

  Nevertheless, improper prosecutorial comments in closing argument will only amount to reversible error if they result in substantial prejudice to the defendant such that absent the remarks the outcome of the trial would have been different. 
People v. Whitlow
, 89 Ill. 2d 322, 433 N.E.2d 629 (1982).  Once again, given the overwhelming evidence of Mr. Parker's guilt, we hold that the comment above could not have determined the outcome of the trial.

IV

Mr. Green and Mr. Young argue that the court erred in denying a motion to quash their arrests for lack of probable cause and suppress evidence gained through the arrest.  Since we have reversed Mr. Green's convictions, we will consider this issue only as to Mr. Young.

Probable cause to arrest exists when "the totality of the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed it." 
People v. Rimmer
, 132 Ill. App. 3d 107, 113, 476 N.E.2d 1278, 1282 (1985).

Officer Offet testified that he arrested Mr. Young because Mr. Upshaw had given him his nickname, "Russ," and Officer Offet knew that Mr. Young was called "Russ."  However, at several points in his testimony, Mr. Upshaw said that he had not given Officer Offet Mr. Young's or Mr. Green's nickname.  He added that he did not even know what their nicknames were.

We do not think it is necessary to decide whose testimony to credit, for we believe that there was probable cause under either version of events.  While Mr. Upshaw denied having given Mr. Young's nickname, he did testify that he gave a description of Mr. Young.

"Q. You didn't give a description of anybody?

A. Yes, I gave descriptions.

Q. What were the descriptions that you gave?

A. I told them the guy with the braids had the bat, and Cool J.  It was a few others. That was about it.

Q. When you say the guy with the braids, did he have braids on that day?

A. Yes, he had braids in his hair.

Q. So his hairstyle hasn't changed, right?

A. No." 

When Officer Offet found a person matching the description in the company of the alleged principal at the scene of the crime the next day, he had probable cause to arrest.

V

Finally, Mr. Green contends that the trial court erred in allowing rebuttal evidence challenging his alibi when he himself did not testify.  Since his convictions are reversed, it is unnecessary for us to consider this issue.

CONCLUSION

For the foregoing reasons, all Mr. Green's convictions are reversed, Mr. Young's and Mr. Parker's attempt (murder) convictions are affirmed.  Mr. Parker's aggravated kidnapping convictions are affirmed.  Seven of Mr. Young's aggravated kidnapping counts are affirmed and seven are reversed.

Affirmed in part and reversed in part.

McNULTY and McBRIDE, JJ., concur.