NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200550-U

NO. 4-20-0550

IN THE APPELLATE COURT

FILED
May 23, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| JAMES H. BALLARD, | ) | No. 19CF1851 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The motion of the Office of the State Appellate Defender to withdraw as
             defendant's appellant counsel is granted where the issues that could be raised on
             direct appeal are without merit.

¶ 2     Defendant James H. Ballard appeals from the trial court's judgment of conviction

and sentence. His appointed attorney on appeal, the Office of the State Appellate Defender

(OSAD), has concluded this appeal lacks merit. On that basis and pursuant to *Anders v. California*,

386 U.S. 738 (1967), OSAD has filed a motion to withdraw as counsel. After this court's review

of the record, we have determined OSAD's motion is well-taken. The motion to withdraw as

counsel is granted, and the judgment of the trial court is affirmed.

¶ 3                              I. BACKGROUND

¶ 4     On December 18, 2019, the State charged defendant with attempt (first degree

murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018)) (count I), unlawful possession of a weapon

by a felon (720 ILCS 5/24-1.1(a) (West 2018)) (count II), and two counts of aggravated battery (720 ILCS 5/12-3.05(a)(1), (f)(1) (West 2018)) (counts III and IV). Count I alleged defendant performed a substantial step toward the commission of first degree murder in that, with the intent to kill Lloyd Smith, defendant stabbed Smith in the chest with a knife.

¶ 5    In an August 2020 bench trial, the State presented the testimony of Smith and five police officers. According to Smith, he was, at the time of trial, serving a sentence for residential burglary to defendant's apartment. He pleaded guilty to the offense after stealing defendant's television on December 2, 2019. Presumably as revenge, on December 14, 2019, when Smith was arriving home, defendant, a/k/a "Bump," met him at the door while armed with a knife. Smith said defendant told him he was going to kill him multiple times, while accusing Smith of stealing from him. A struggle ensued, and during that struggle, Smith was stabbed in the chest. Smith denied hitting, threatening, or taunting defendant before the struggle.

¶ 6    Smith said he flagged down a police officer at a nearby gas station and was transported to the hospital where he was treated for a punctured lung. While at the hospital, Smith recalled speaking with Decatur police detective Benjamin Massey, but on the witness stand, Smith said he did not know exactly what he had told Massey. He said he just knew "Bump" pulled a hunting knife from his side, got on top of him, and stabbed him in the chest. Smith said he was able to escape but defendant chased him a "little bit," though he did not tell the police that. Smith recalled telling Massey that defendant had been "going around the [apartment] complex" telling others he was going to kill Smith because he believed Smith stole items from him. Smith said he knew defendant because he had previously purchased "crack" from him, paying defendant with stolen items. Smith admitted he had lied to Massey when he told Massey he had not stolen defendant's television.

¶ 7 Defendant testified he knew Smith as his next-door neighbor's boyfriend. On the date of the incident, defendant was outside his apartment building when Smith approached and asked him for "change for a 20." Defendant recognized Smith as "the guy that had taken [his] TV." Defendant said he took the $20 bill from Smith and noticed it "didn't look or feel right," so he handed it back to Smith. According to defendant, Smith "became agitated, angry, belligerent." Defendant said Smith pulled out a buck knife and demanded defendant's money. The two struggled over the knife until Smith ran off. Defendant did not know Smith was stabbed but agreed it was possible.

¶ 8 Defendant did not deny telling the police officer investigating the theft of his television in December 2019 that he would "hurt" Smith. However, according to defendant, he and Smith "had made up actually." Defendant said Smith agreed to pay him $50 per month for a total of $300 to pay for the stolen television. So, defendant said, when Smith "pulled this stunt," attacking and trying to rob him, he got mad.

¶ 9 On cross-examination, defendant explained that, in December 2019, while he was outside of the apartment building, he saw Smith carrying a television down the stairs. He did not know at that time it was his television. When he arrived at his apartment, he saw that his door was broken, and his television was missing. Defendant admitted telling the police during their investigation of the robbery that he was "going to kill [Smith]."

¶ 10 Defendant also admitted telling the police during their investigation of the stabbing the following: "Street justice. Man-to-man type of shit. I'll go to jail. I'll do life. I don't give a fuck. He ain't going to take nothing from me." On redirect examination, defendant said, when he made this comment to the police officer, he was just "repeating a bad joke at the wrong time maybe."

¶ 11 Following the bench trial, the trial court found defendant guilty of attempt (first degree murder) and two counts of aggravated battery. The court found defendant not guilty of the weapons charge because, according to the court, the State had failed to produce sufficient evidence as to the length of the knife blade.

¶ 12 In announcing its ruling, the trial court said, "This is one of those cases that does come down to credibility, first of all." The court found Smith's testimony credible and found it "important that the defendant did make statements about street justice, not taking anything from him." The court said it found defendant's testimony about "this being a self-defense" case was not credible. The court sentenced defendant to 12 years' imprisonment on his attempted first degree murder conviction, merging the aggravated battery convictions therewith.

¶ 13 This appeal followed. As stated, OSAD was appointed to represent defendant on appeal. On April 29, 2021, it filed a motion to withdraw as appellate counsel. This court granted defendant leave to file a response to OSAD's motion, but he has not responded.

¶ 14 II. ANALYSIS

¶ 15 On appeal, OSAD filed both a motion to withdraw as appellate counsel and an accompanying memorandum of law in support of that motion. After identifying four potential issues that could be raised on appeal, OSAD concluded those issues are without arguable merit. OSAD considered whether (1) the evidence was sufficient to sustain defendant's conviction for attempted first degree murder, (2) defendant validly waived his right to a jury trial, (3) the trial court erred in admitting the recordings of defendant's telephone calls from jail, and (4) the trial court abused its discretion when it sentenced defendant to 12 years.

¶ 16 A. Sufficiency of the Evidence

¶ 17    First, OSAD addresses whether the State presented sufficient evidence to prove defendant guilty of attempt (first degree murder). To sustain a conviction for this offense, the State must prove the following two elements beyond a reasonable doubt: (1) the defendant performed an act constituting a substantial step toward the killing of an individual and (2) he performed the act with the specific intent to kill the individual. 720 ILCS 5/8-4(a), 9-1(a)(1) (West 2018).

¶ 18    "Intent is a state of mind and thus is usually difficult to establish by direct evidence. [Citation.] Accordingly, specific intent to kill may be, and normally is, inferred from the surrounding circumstances, such as the character of the attack, the use of a deadly weapon [citation], and the nature and extent of the victim's injuries [citation]." *People v. Parker*, 311 Ill. App. 3d 80, 89 (1999). However, in this case, the trial court heard Smith's testimony that, during the altercation, which led to the stabbing, defendant stated his intent to kill. Also, according to the testimony of one of the officers, defendant said, when he reported that Smith had stolen his television, he would kill Smith. Most importantly, during his own testimony, defendant acknowledged (1) telling the police he was going to kill Smith and (2) describing the stabbing incident as "street justice." The fact defendant brought a knife to perform this "street justice," coupled with his stated threats to Smith's life and his conduct of stabbing Smith in the chest, was sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that defendant took a substantial step toward the commission of first degree murder.

¶ 19    Had OSAD raised this issue in defendant's appeal, this court would have applied the appropriate standard of review, namely we would have considered the evidence in the light most favorable to the State and then determined whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). We also would have deferred to the trier of fact on credibility determinations, as those

determinations are exclusively within its province. *Id.* at 261-62. Here, the trial court, as the trier of fact, found Smith's testimony credible and defendant's testimony not credible.

¶ 20    Based on this record, we agree with OSAD's assessment—"there is no non-frivolous basis on which to challenge the sufficiency of the evidence against [defendant]." We agree any rational trier of fact could conclude beyond a reasonable doubt defendant intended to kill Smith and took a substantial step toward the commission of first degree murder.

¶ 21                            B. Waiver of Jury Trial

¶ 22    Next, OSAD addresses whether there would be any nonfrivolous argument that could be made relating to defendant's written jury waiver. At a hearing on July 10, 2020, one month before the trial court conducted a bench trial, the parties convened for a pretrial hearing. Defendant's counsel advised defendant was "asking to allot his case for a bench trial." The court explained the difference between a jury trial and a bench trial and admonished defendant regarding his choice to proceed to trial without a jury. Defendant indicated he (1) understood the admonishments, (2) was not forced into the decision, (3) was not promised anything in return, (4) was not threatened to make the decision, and (5) made this decision on his own free will. The court accepted defendant's jury waiver and advised defendant he would be required to sign a waiver. That signed waiver appears in the common law record.

¶ 23    A defendant's waiver of his right to a jury trial must be knowingly and understandingly made. 725 ILCS 5/103-6 (West 2018) ("Every person accused of an offense shall have the right to a trial by jury unless [ ] understandingly waived by defendant in open court."). A written waiver, as required by section 115-1 of the Code of Criminal Procedure of 1963, is one means by which a defendant's intent may be established. See 725 ILCS 5/115-1 (West 2018) ("All prosecutions *** shall be tried by the court and a jury unless the defendant waives a jury trial in

writing."). Further, there is no set admonition or advice to be given by the trial court to the defendant for a waiver to be effective. *People v. Bracey*, 213 Ill. 2d 265, 270 (2004). "Generally, a jury waiver is valid if it is made by defense counsel in defendant's presence in open court, without an objection by defendant." *Id.*

¶ 24    Here, in open court and with defendant present, defendant's counsel informed the trial court defendant was "asking to allot his case for a bench trial." The court thoroughly admonished defendant, and thereafter, defendant orally acknowledged his waiver and confirmed the same in writing. On these facts, there appears to be no grounds upon which defendant could challenge his jury waiver as to the voluntary, knowing, or intelligent nature of the waiver.

¶ 25                    C. Admission of Recorded Jail Telephone Calls

¶ 26    Next, OSAD addresses whether the trial court erred in allowing the admission of the recordings of defendant's telephone calls made while at the Macon County jail. OSAD addresses the relevancy of, whether the State had laid a proper foundation for, the accuracy of, and the reliability of the recordings.

¶ 27    The decision of whether evidence should be admitted belongs to the sound discretion of the trial court, and on review, we would not reverse that decision absent an abuse of discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). An abuse of discretion occurs when the court's ruling is arbitrary or fanciful or where no reasonable person would adopt the court's view. *Id.*

¶ 28    An audio recording, which is otherwise competent, material, and relevant, is admissible into evidence if a proper foundation is laid establishing authenticity and reliability of the recording. *People v. Melchor*, 136 Ill. App. 3d 708, 711 (1985). Relevant evidence is that which

tends to make the question of guilt more or less probable. *People v. Mendez*, 2013 IL App (4th) 110107, ¶ 28.

¶ 29    When laying a proper foundation for a recording, the State may rely upon the silent witness theory for authentication. Under this theory, a witness need not have personally heard the conversation so long as the witness can testify to the accuracy of the process used to produce the evidence. *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 46.

¶ 30    At trial, in rebuttal, the State called the assistant jail superintendent for the purpose of introducing the audio recordings of defendant's telephone calls while in jail. Over defense counsel's objection, the trial court admitted these recordings into evidence. OSAD now addresses whether any issue can be raised challenging the court's admission.

¶ 31    OSAD first notes that no meritorious claim could be made to challenge the relevancy of the recordings. We agree. Defendant testified at trial that between the theft of his television and the altercation at issue, he saw Smith multiple times. He said they had even made peace. However, in the telephone calls, he denied ever seeing Smith after the theft. Also, at trial, defendant admitted he engaged in the subject altercation with Smith after Smith attacked him. However, in the telephone calls, he denied being involved in any altercation with Smith. For these reasons, the recordings were relevant, at a minimum, in terms of defendant's credibility.

¶ 32    OSAD also addresses whether the recordings were properly authenticated for the purpose of laying an adequate foundation. The assistant jail superintendent testified all jail telephone calls are recorded through the Securus system, which was in proper operating mode at all relevant times, and the recordings are preserved in the usual course of business with no changes, additions, or deletions. He said each inmate is assigned a personal identification number (PIN) which the inmate enters before making a call. Defendant admitted making all the telephone calls

introduced by the State using either his PIN or that of another inmate. Pursuant to the recordings, the male voice in each is the same voice. In light of this evidence, we agree with OSAD that no reasonable argument can be raised challenging the foundation, authentication, accuracy, or reliability of the recordings.

¶ 33    OSAD also notes defendant could not reasonably raise a claim of prejudice since the substance of the calls included exculpatory evidence in that defendant denied he was involved in the altercation. Further, the trial court specifically stated, when ruling on defendant's posttrial motion, "[T]hose phone calls played little or no part in my decision as to defendant's guilt beyond a reasonable doubt." Given this record, we agree with OSAD that no reasonable argument could be raised on appeal relating to the admission of the recordings.

¶ 34                                    D. Sentencing

¶ 35    Lastly, OSAD addresses whether any reasonable argument can be made on appeal relating to defendant's sentence. It found none.

¶ 36    "The sentence imposed by the trial court is entitled to great deference and will not be reversed on appeal absent an abuse of discretion." *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38. "The trial court's imposition of a sentence is given great deference because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. We also presume that a sentence within the statutory framework provided by the legislature is proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. "The trial court abuses its discretion at sentencing only when the sentence varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 39.

- 9 -

¶ 37 In this case, the trial court sentenced defendant to 12 years in prison upon his conviction of attempt (first degree murder). The court merged defendant's two convictions of aggravated battery into his attempt conviction. The permissible range of sentencing for this Class X felony is 6 to 30 years. See 720 ILCS 5/8-4(c)(1) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). When it imposed the 12-year sentence, the court noted defendant's "lengthy criminal history starting with felonies in 1991." After considering "the facts and circumstances" of this case and "the factors of aggravation and mitigation," the court imposed the 12-year sentence to be served at 85% followed by a 3-year term of mandatory supervised release. The court applied presentencing credit for time served between December 14, 2019, to October 25, 2020.

¶ 38 Because defendant's sentence of 12 years fell within the permissible statutory range and because the trial court considered the appropriate factors, we, like OSAD, find no abuse-of-discretion argument can be made on direct appeal.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we agree with OSAD that no meritorious issue could be raised on appeal. We therefore grant OSAD's motion to withdraw as appellate counsel and affirm defendant's conviction and sentence. See *Anders*, 386 U.S. at 744.

¶ 41 Affirmed.