**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210308-U

Order filed June 29, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-21-0308 |
| v. | ) ) | Circuit No. 16-CF-806 |
| ARTHUR L. KNOX, | ) ) | Honorable Edward A. Burmila Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge and Justice Hettel concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The State proved defendant guilty beyond a reasonable doubt of attempted first degree murder, but the circuit court erred in failing to conduct a second preliminary *Krankel* inquiry.

¶ 2     Defendant, Arthur L. Knox, appeals his conviction of attempted first degree murder. Defendant argues the State failed to prove beyond a reasonable doubt that he possessed the intent to kill the victim and the Will County circuit court failed to conduct an additional preliminary

inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). We affirm defendant's conviction, but remand for a preliminary *Krankel* inquiry.

¶ 3                                                    I. BACKGROUND

¶ 4        Defendant was charged with attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(l) (West 2016)) and aggravated domestic battery (*id.* § 12-3.3(a)) after stabbing his ex-girlfriend, Lisa Cummins, multiple times in the neck, chest, and abdomen on April 4, 2016. A bench trial was held on December 5, 2019, where the evidence showed Lisa and defendant began dating in December 2014. They lived together for six to eight months before ending their relationship in February 2016. Lisa then lived with her sister, Vida Cummins. The week prior to the incident, defendant visited Vida's house inquiring about Lisa's whereabouts because he needed a ride to work. Vida informed defendant Lisa was out of town.

¶ 5        On April 4, 2016, defendant called Lisa several times, the last call occurring around 4 or 5 a.m. She did not answer. At approximately 6:30 a.m., Lisa exited Vida's house and walked to her car parked in the back of the house. While walking to her car, she saw defendant running toward her. Lisa did not see whether defendant had a weapon. She turned to run away but slipped and fell. Defendant then jumped on top of her and began stabbing her with a knife. Lisa was unable to describe the knife, and it was never recovered. During the attack, defendant rambled accusations that Lisa was cheating on him. After several minutes, defendant stopped the attack of his own accord and got off Lisa. Defendant remained in the back yard watching Lisa for a few seconds before fleeing.

¶ 6        Lisa walked back into Vida's house and an ambulance was called at 6:45 a.m. The responding paramedic arrived at 6:52 a.m. and identified eight wounds including: two half-inch lacerations to Lisa's abdomen, two one-inch lacerations to the right side of her neck below her

2

chin, two half-inch lacerations to the left side of her neck, one half-inch laceration to her left hand, and one half-inch laceration to her chest.

¶ 7    The parties stipulated that nurse Kathleen Crafton would testify that Lisa arrived at the hospital at 7:32 a.m. on April 4, 2016. Crafton observed multiple stab wounds to Lisa's neck, chest, and abdomen. She documented superficial lacerations to Lisa's neck and "tunneling wounds" on the left side of her chest and the right side of her abdomen. Crafton documented significant swelling in Lisa's neck. The tunneling wounds were cleaned and dressed and the remainder of the cuts were closed with Steri-Strips. The parties also stipulated that Dr. Jonathan Wu would testify that he ordered X-rays of the wound on Lisa's chest which "revealed pneumomediastinum"[1] extending into the neck but normal pulmonary vascularity. There was no definite or major organ injury. Lisa was released from the hospital on April 6, 2016.

¶ 8    The court found defendant guilty of attempted first degree murder and aggravated domestic battery. The court determined that defendant was angry on the date of the incident because he thought Lisa was cheating on him, ambushed her with a knife, and stabbed her multiple times. The court went on to state that it was "only by luck that [the] wounds were superficial." The court, therefore, held the evidence indicated defendant's intent to kill Lisa. The court later vacated the aggravated domestic battery conviction pursuant to the one-act, one-crime rule.

¶ 9    On June 29, 2020, defendant filed a *pro se* motion alleging various claims of ineffective assistance of trial counsel. The court conducted a preliminary *Krankel* inquiry on August 4, 2020. After reviewing defendant's motion, hearing defendant's complaints, and questioning trial counsel, the court denied the motion. On August 14, 2020, defendant filed a *pro se* motion alleging

---

[1]Wu's statement explained "Pneumomdiastium, which is also known as mediastinal emphysema, is a condition in which air is present in the mediastinum (the space in the chest between the two lungs). This can be caused by a traumatic injury or in association with pneumothorax or other diseases."

3

that perjury was used to obtain an indictment against him, and his trial counsel was ineffective for failing to address that issue with the court. Defendant had not previously raised this claim. On September 14, 2020, the court denied defendant's July 30, 2020, motion to reconsider, and set another preliminary *Krankel* inquiry for September 27, 2021. However, on this date the court instead granted trial counsel's motion to withdraw because defendant had filed a complaint with the Attorney Registration and Disciplinary Commission. The court did not address the pending motions defendant had filed at that time. The court appointed new posttrial counsel to represent defendant. New posttrial counsel noted, "I don't particularly see any issues of ineffective assistance of counsel that I could bring forth." Posttrial counsel filed another motion to reconsider, arguing the court erred in giving more weight to Lisa's subjective belief that she was going to die rather than the medical testimony which showed her wounds were superficial. The motion was denied. Defendant then filed various *pro se* motions to reconsider and for a new trial, continuing to allege trial counsel was ineffective. These motions were later withdrawn without prejudice.

¶ 10 The court sentenced defendant to 17 years' imprisonment. The sentence was later reduced to 15 years' imprisonment following a motion to reconsider. Defendant appeals.

¶ 11 II. ANALYSIS

¶ 12 On appeal, defendant argues (1) the State failed to prove him guilty beyond a reasonable doubt of attempted first degree murder where the evidence did not show that he had the specific intent to kill Lisa, and (2) the court erred in failing to conduct a second preliminary *Krankel* inquiry. We consider these arguments in turn.

¶ 13 A. Sufficiency of the Evidence

¶ 14 When reviewing the sufficiency of the evidence, the relevant inquiry is whether, viewed in the light most favorable to the State, any rational trier of fact could have found the essential

4

elements of the crime beyond a reasonable doubt. *People v. Howell*, 358 Ill. App. 3d 512, 528 (2005). All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 327 (2005). It is not the function of the reviewing court to retry the defendant. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 15    To sustain a conviction for attempted first degree murder, the State is required to prove beyond a reasonable doubt that defendant "(1) performed an act constituting a 'substantial step' toward the commission of murder and (2) intended to kill the victim." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 41; 720 ILCS 5/8-4, 9-1(a)(l) (West 2016). In the instant case, defendant does not contend that the State failed to prove the first element. Instead, he solely argues that the State failed to prove that he possessed the necessary specific intent. "Proof of a specific intent to kill is a necessary element of the offense." *Vega*, 2018 IL App (1st) 160619, ¶ 41. Intent to solely cause great bodily harm is insufficient to support a conviction of attempted first degree murder. *People v. Harris*, 72 Ill. 2d 16, 27 (1978).

> " 'Intent is a state of mind which, if not admitted, can be established by proof of surrounding circumstances, including the character of the assault, the use of a deadly weapon, and other matters from which an intent to kill may be inferred. [Citations.] Such intent may be inferred when it has been demonstrated that the defendant voluntarily and willingly committed an act, the natural tendency of which is to destroy another's life.' " *People v. Green*, 339 Ill. App. 3d 443, 451 (2003) (quoting *People v. Winters*, 151 Ill. App. 3d 402, 405 (1986)).

¶ 16    Here, the evidence showed that defendant waited for Lisa so he could ambush her with a knife. When Lisa exited the house, defendant jumped on top of her and repeatedly stabbed her in the neck, chest, and abdomen while accusing her of cheating on him. Following the attack, Lisa went inside, bleeding profusely from the multiple stab wounds. She was then transported by ambulance to the hospital where she stayed from April 4 to April 6. Dr. Wu's stipulated testimony provided that an X-ray of Lisa's chest "revealed pneumomediastinum," which he explained could be caused by a traumatic injury. Defendant's intent to kill Lisa was established from the surrounding circumstances given the planned ambush; nature of the assault; the multiple stab wounds to Lisa's neck, chest, and abdomen; and the use of a knife. See, *e.g.*, *People v. Miller*, 284 Ill. App. 3d 16, 24-25 (1996) (intent was proven beyond a reasonable doubt where the defendant stabbed the victim once in the neck, came back to the victim lying on the ground, and stabbed him four more times with enough force to puncture a lung).

¶ 17    Defendant argues the evidence was insufficient to support a finding of a specific intent to kill because the injuries to Lisa were only superficial, and he had ample opportunity to kill her but did not. Defendant's arguments are unpersuasive. First, the circuit court determined that it was "only by luck that [the] wounds were superficial," and we agree given the use of a knife and the critical locations of the wounds in her neck, chest, and abdomen. Second, "the fact that the defendant[ ] allowed the victim to escape does not automatically exculpate [him]." *People v. Parker*, 311 Ill. App. 3d 80, 90 (1999). Under Illinois law, if defendant intended to kill at the start of the offense, it does not matter if he changed his mind later. *Id.* "Abandonment is not a defense to criminal attempt in Illinois." *Id.* While defendant's behavior after the attempted murder is a relevant consideration, it will only overcome the inference of intent to kill where defendant takes

6

an affirmative step to save the victim. Defendant made no such attempt here. Rather, he remained watching her briefly and then fled the scene. See *id.* at 91.

¶ 18 In concluding defendant had an intent to kill, we reject his reliance on *People v. Thomas*, 127 Ill. App. 2d 444 (1970), as it is factually distinguishable. In *Thomas*, the defendant broke into the victim's home and threatened her with a knife. *Id.* at 446. He "banged her head against a chest of drawers" and swung the knife at one of her children. *Id.* at 447. The defendant used the knife to strike the victim in the shoulder and "pick[ed] at her face with his knife," before sexually assaulting and robbing her. *Id.* The entire interaction lasted over 45 minutes. *Id.* at 454-55. Here, unlike *Thomas*, defendant actually stabbed Lisa multiple times in the neck, chest, and abdomen—an act " 'the natural tendency of which is to destroy another's life.' " *Green*, 339 Ill. App. 3d at 451 (quoting *Winters*, 151 Ill. App. 3d at 405). The short outside attack from ambush in this case differs significantly from the prolonged assault in *Thomas*, which presented an "opportunity for murder" but no attempt to kill. *Thomas*, 127 Ill. App. 2d at 456.

¶ 19 B. *Krankel* Inquiry

¶ 20 Defendant next argues the circuit court erred in failing to conduct a preliminary inquiry of his August 14, 2020, claims of ineffective assistance. A defendant has the constitutional right to the effective assistance of counsel. U.S. Const. amend., VI, XIV; Ill. Const. 1970, art. I, § 8. If a defendant raises a *pro se* posttrial claim that he was denied his constitutional right to the effective assistance of trial counsel, the court must inquire further into defendant's allegations. *Krankel*, 102 Ill. 2d at 189; *People v. Roddis*, 2020 IL 124352, ¶ 34. "Hearing those claims is a two-step process: (1) the circuit court makes a preliminary inquiry to examine the factual basis of the defendant's claim and (2) if the allegations show 'possible neglect of the case,' new counsel is appointed to represent the defendant in a full hearing on his *pro se* claims." *People v. Horman*, 2018 IL App

7

(3d) 160423, ¶ 24. The defendant only needs to bring the claim to the court's attention to trigger a preliminary inquiry. *Id.* "Even where the court has already conducted an inquiry into claims of ineffective assistance, it must conduct a preliminary *Krankel* inquiry into further claims raised afterward." *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 19 (citing *Horman*, 2018 IL App (3d) 160423, ¶ 29). The appointment of new counsel does not moot the issue. *Id.* ¶ 20. "The applicable standard of review depends on whether the trial court did or did not determine the merits of the defendant's *pro se* claims of ineffective assistance of counsel." *People v. Jackson*, 2020 IL 124112, ¶ 98. "Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*." *Id.*

¶ 21    Here, defendant raised a novel ineffective assistance claim regarding issues of perjury on August 14, 2020, 10 days after the first preliminary *Krankel* inquiry on August 4, 2020. This issue was not addressed by the court and the appointment of posttrial counsel did not moot the issue. The court was required to hold another preliminary *Krankel* inquiry. Therefore, we remand the case to the circuit court for a second preliminary *Krankel* inquiry into defendant's unaddressed claims.

¶ 22                        III. CONCLUSION

¶ 23    The judgment of the circuit court of Will County is affirmed and remanded.

¶ 24    Affirmed and remanded.